# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LAKILA AUSTIN,** | * |
| Plaintiff, | * |
| v. | * Civil No. **PJM 18-0922** |
| **SAFEWAY,** *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

*Pro Se* Plaintiff Lakila Austin has sued Safeway and an unnamed Safeway Labor Relations Manager, alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, and unspecified claims under the Americans with Disabilities Act (ADA) and the Genetic Information Nondiscrimination Act (GINA). She also suggests in her pleadings, but not in her Complaint as it stands, that she has a Negligent Hiring/Retention claim against Safeway and possibly an assault and battery claim against another Safeway employee, Henry Carter, not presently a party to the suit.

Safeway has filed a Motion to Dismiss the Complaint (ECF No. 10). The matter has been fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105(6). For the reasons that follow, Safeway's Motion to Dismiss (ECF No. 10) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 2014, Austin began working in the cut fruit department of a Safeway store located at 1701 Corcoran Street N.W. in Washington, D.C. ECF No. 4 at 1, ECF No. 12 at 2. Allegedly, on her very first day of work, Henry Carter, the Seafood Manager at the store, said he hoped Austin

1

was being hired for his department because he needed help and would love to watch her work all day. ECF No. 12 at 2. Thereafter, Carter "would always come over" to Austin's department and watch her work and, while she was working alone, would "[stick] his tongue out, and [lick] his lips and [grab] himself in an inappropriate way." *Id*. That first summer, Austin "would verbally inform [her] Manager, Union Rep, [and] Store Manager about [her] concerns and issues" with Carter, but "nothing was ever done to address" them. *Id*.

Eventually, "the sexual advancement got so bad that [Austin's] manager had to force Mr. Carter from coming into the produce department by being rude" to him. ECF No. 12 at 3. Rudeness notwithstanding, Carter allegedly would still wait until Austin was alone, then return to her department to harass her. *Id*. In the fall or winter of 2014, Austin also became aware of Carter harassing another female co-worker, and that the Store Manager was aware of the situation. *Id*.

On December 16, 2016, Carter approached Austin and initiated what began as a normal conversation. ECF No. 1 at 7. Carter was drinking from a bottle that, Austin alleges, he said contained alcohol. ECF No. 4 at 3. Carter allegedly began telling Austin that he would have his way with her and another female coworker if they let him. *Id*. Austin told Carter she was not interested in that and that he should return to work. Austin claims Carter then started talking about kissing her, and she said she was not interested in him, "period," and turned back to her work. *Id*. Carter then supposedly leaned in to kiss Austin, who held him at arm's length. *Id*. She again told him to return to his department, but he refused. *Id.* Austin says Carter then hugged her from behind in a "bear hold/ hug." ECF No. 4 at 3. Austin waved her hand at the shop's security camera to summon help, but the camera was apparently non-functional that weekend. ECF No. 4 at 1. After Carter let her go, Austin cleaned her station and clocked out early because she was so distressed.

2

ECF No. 4 at 3. That same day, Carter allegedly tried to kiss another female employee while on the job. *Id*.

On December 17, 2016, the day after the hugging incident, Austin returned to work and informed management and her union representative what had happened. ECF No. 4 at 3. Management told Carter to apologize and he did so. *Id*. Carter was suspended after the incident; Austin's Complaint indicates that Carter is no longer employed by Safeway. ECF No. 1 at 7.

Contemporaneously with the incident, Austin wrote an e-mail to an unnamed third party describing the incident in detail. *See* ECF No. 4 at p. 3. Austin thereafter filed a charge of sexual harassment with the EEOC on December 20, 2016, indicating December 16, 2016, the day Carter physically assaulted her, as the date of discrimination. ECF No. 4 at 1. An EEOC investigation followed, with no apparent determination being made, and on January 3, 2018, the EEOC closed its investigation and issued Austin a Right to Sue letter. *Id*. at 2.

Austin filed the instant suit on March 30, 2018, ECF No. 1, and Supplemented her Complaint with additional information on April 30, 2018. ECF No. 4. Safeway submitted its Motion to Dismiss for failure to state a claim and lack of jurisdiction on June 14, 2018. ECF No. 10. Austin submitted a "Memorandum of points and Authorities in Support of Complaint" on July 6, 2018, ECF No. 12, and Safeway submitted its Reply on July 20, 2018. ECF No. 13.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts

3

sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). But this standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Overall, the Complaint must contain factual allegations sufficient to apprise a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

Federal courts are obliged to liberally construe a *pro se* litigant's claims in applying the above analysis, but the Fourth Circuit has noted that "[w]hile *pro se* complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)).

To prove sexual harassment that creates a hostile work environment in violation of Title VII, a plaintiff has the burden of proving (1) unwelcome conduct; (2) based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer. *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).

"Before a Title VII plaintiff can bring a formal suit, [s]he must file an administrative charge with the Equal Employment Opportunity Commission (EEOC)." *Chacko v. Patuxent Institution*,

429 F.3d 505, 506 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996). "Motions to dismiss for failure to exhaust administrative remedies are governed by Federal Rule of Civil Procedure 12(b)(1)." *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D. Md. 2003).

### III. DISCUSSION

*A. Claims Against "Safeway Labor Relations Manager"*

Austin purports to sue Safeway's "Labor Relations Manager" in addition to Safeway. ECF No. 1 at 4. However, she has identified no individual as the Labor Relations Manager, nor is there any basis to surmise who that person may be, or what involvement he or she may have had in the underlying events. Indeed, there is no mention of a Labor Relations Manager anywhere in the Complaint other than on the list of Defendant(s). *See id*.

There seem to be two likely explanations as to the role of the Labor Relations Manager as a Defendant in this case: either Austin seeks to hold some individual in a supervisory position liable for the harassment she allegedly experienced, or she seeks to hold responsible the Safeway corporate entity charged with ensuring acceptable working conditions. If the former, supervisors are not liable in their individual capacities under Title VII. *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). If the latter, suing Safeway alone suffices. Therefore, and because there are no specific allegations as to actions or inactions by any Labor Relations Manager, Safeway's Motion to Dismiss will be **GRANTED** as to all claims against the "Labor Relations Manager."

5

### B. GINA and ADA Claims against Safeway

Austin alleges unspecified violations of the Americans with Disabilities Act (ADA) and the Genetic Information Nondiscrimination Act (GINA). ECF No. 1 at 5. However, in her Response, Austin concedes that the Americans with Disabilities Act does not apply to her and that her claim under it should be dismissed. ECF No. 12 at 6. Accordingly the Court will **DISMISS** the ADA claim.

As to her GINA claim, it is not clear what particular claim Austin purports to make under that statute. She does not mention GINA, nor does she allege discrimination based specifically on her genetics, in either her Complaint or her Response. See ECF Nos. 1, 12. A charitable construction of her Complaint would be that she is attempting to allege violations of GINA because discrimination based on sex/gender could be considered discrimination based on a biological—i.e. genetic—trait. However, it is well settled that a plaintiff may not assert an ADA or GINA discrimination claim in court until she has exhausted her administrative remedies as to those claims. *See* 42 U.S.C. § 12117(a).

Austin only checked the box for "sex" discrimination on her EEOC complaint, not the ones for disability or genetic information, nor does she mention disability or genetic discrimination in her factual narrative in that Charge. *See* ECF No. 4 at 1. When a litigant has not checked the box for a specific type of EEOC investigation, nor otherwise mentions discrimination of that type in her charge of discrimination, the EEOC cannot reasonably have been expected to have investigated that type of discrimination. *See, e.g., Talbot v. U.S. Foodservice, Inc.*, 191 F.Supp.2d 637, 640 (D. Md. 2002).

Because Austin did not exhaust her administrative remedies as to either claim, does not mention either in her Complaint or her Response, and has conceded that at least the ADA claim is

inapplicable to her, Safeway's Motion to Dismiss will also be **GRANTED** as to the GINA and ADA claims against Safeway.

  C. *Negligent Hiring/Retention Claim Against Safeway*

Although absent from her original Complaint and Supplement, in her Response Austin alleges that "Safeway **knew** that Mr. Carter was a registered Sex Offender and that he was drunk on the job the day he assaulted me." ECF No. 12 at 4 (emphasis in original). In its Reply, Safeway argues that Austin cannot state a claim for negligent hiring and/or retention because "Title VII may not form the predicate for claims of negligent retention and supervision" because there is no Maryland common law cause of action for employment discrimination. *Whittaker v. David's Beautiful People, Inc.*, Civ. No. DKC 14-2483, 2016 WL 429963 (D. Md. Feb. 4, 2016) (quoting *Demby v. Preston Trucking Co., Inc.*, 961 F.Supp. 873, 881-82 (D.Md. 1997) (citations omitted)). Safeway also argues that the Court should not consider any Negligent Hiring/Retention claim because one does not appear in Austin's original Complaint. Safeway's argument is not well taken.

The Maryland Court of Appeals has held that a negligent retention and supervision claim is not preempted when the underlying conduct is based, at least partially, on an independent common law cause of action such as assault and battery. *Ruffin Hotel Corp. of* Md*. v. Gasper*, 418 Md. 594, 615-18 (2011); *see also Robinson v. DarCars of New Carrolton, Inc.*, No. DKC-11-2569, 2012 WL993405, at *5 (D.Md. March 22, 2012) ("Thus, for example, where a negligence claim is based on common law assault or battery, Title VII does not preempt the negligence claim.").

Thus, while Safeway's argument that Title VII cannot form a basis for a negligent hiring or retention claim is therefore accurate, both Austin and Safeway's arguments on this point appear to be somewhat confused as to the actual claim she is making. While the facts Austin alleges in her

7

pleadings may state a claim for Title VII sexual harassment, in her narrative she has also articulated a physical assault that could constitute a battery claim which, depending on the circumstances, would also support a Negligent Hiring/ Retention claim against Safeway. In Maryland, "[t]he tort of negligent selection, training, or retention, like any negligence action, requires the plaintiff to prove the existence of four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted" from that breach. *Jones v. Family Health Centers of Baltimore, Inc.*, 135 F.Supp.3d 372, 381 (D. Md. 2015) (quoting *Jones v. State*, 425 Md. 1, 38 A.3d 333, 343 (Md. Ct. App. 2012)).

Because the physical touching (hugging, attempting to kiss forcefully) by Carter occurred within three years before Austin mentioned it in her Complaint, a possible Common Law claim for Negligent Hiring/Retention would fall within the Statute of Limitations and could be properly raised.[1]

Because she is *pro se*, Austin is entitled to some leeway with regard to how she raises her claims. Therefore, the Court will **DENY** Safeway's Motion to Dismiss as to any Negligent Hiring/Retention claim against Safeway and any assault and battery claims against Carter, and will **GRANT** Austin leave to Amend her Complaint to include more specific facts going to Safeway's knowledge of any assaultive conduct by Carter, when it had such knowledge, and how it failed to act on such knowledge thereby breaching its duty to provide Austin with a safe working environment. That should be stated as a separate Common Law Negligent Hiring/Retention claim against Safeway.

D. *Potential Assault and/or Battery Claim Against Henry Carter*

---

[1] The Court will consider Austin to have raised this claim as of the date she filed her Response, i.e., July 6, 2018.

Austin has not sued Carter in this case, which she could do insofar as he may have committed an assault and/or battery against her. If Austin intends to sue Carter, she must formally add him as a party to the case and serve him pursuant to Federal Rule of Civil Procedure 4. She may do so within the 45 days the Court is allowing her to amend her Complaint.

    E.  *Title VII Sexual Harassment Claim Against Safeway*

To prove sexual harassment that creates a hostile work environment in violation of Title VII, a plaintiff has the burden of proving (1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer. *Okoli*, 648 F.3d at 220. In this case, the issue is whether Austin has made a *prima facie* case as to the third and fourth elements.

In determining whether conduct is sufficiently severe or pervasive to establish an actionable hostile work environment claim, courts look to the "totality of the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The plaintiff must show both that she "subjectively perceived the environment to be abusive" and that "the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks and citations omitted).

Employers are not liable for every harassing action employees engage in. *See Vance v. Ball State Univ.*, 570 U.S. 421, 428, 133 S. Ct. 2434, 2441 (2013). When the conduct is that of a co-worker (rather than a supervisor), liability for a hostile work environment is only imputed to an employer if there is "actual knowledge by the employer, or high-echelon officials of an employer organization, of sufficiently harassing action by subordinates, which the employer or its informed officers have done nothing to stop." *Butler v. Maryland Aviation Admin.*, No. MJG-11-2854, 2012 WL 3541985, at *4 (D. Md. Aug. 14, 2012); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (if the harassing employee is not a supervisor, the employer is only responsible for the actions of the harassing employee if they were negligent).

In Austin's Complaint and Supplement, she alleges the following facts:

- "On December 16, 2016, I was subjected to unwelcome physical advances and comments of a sexual nature." ECF No. 1 at 7;
- "Carter… who was intoxicated, approached me. Normal conversation quickly turned into a sexual conversation about me… Carter tried to kiss me forcefully… I started screaming…the next thing I knew [Carter] was hugging me still try[ing] to kiss me all against my will." *Id.*;
- "I am aware several other female employees have been subjected to his unwelcome advances." ECF No. 4 at 1;
- "I was later in form [sic] that this isn't his first time assaulting a lady on the job," *Id.* at 3;
- "He's always told to apology and stay away which he doesn't even comply with." *Id*.

In her Response, Austin also alleges that the harassment began early in her employment and apparently continued through at least 2016, and that her Manager and the Store Manager were aware of the harassment but failed to act. *See* ECF No. 12 at 2-4.

Safeway argues that Austin's only timely allegation is that of the alleged physical assault on December 16, 2016; otherwise her specific allegations of harassment in the Summer and Fall of 2014 occurred more than 300 days before she filed her EEOC Charge. *See Brown v. Mass Transit Admin.*, ELH 12-3705, 2013 WL 1428527 at *3 (D. Md. Apr. 8, 2013). Safeway further argues that the December 16, 2016 occurrence was analogous to the "hugging incident" in *Clark v. Sunipa II Inc.*, No. 10-cv-2027-AW, 2011 WL 5439000 (D. Md. Nov. 8, 2011), which was not sufficiently severe or pervasive to state a sexual harassment claim under Title VII. Safeway concludes that Austin's alleged "one occasion" where Carter "attempted to kiss her and hugged her" is similarly not sufficiently severe or pervasive.

As an initial matter, Safeway's reliance on *Clark* is misplaced. In that case, the plaintiff's allegations showed that "the hugging incident was isolated" and she "fail[ed] to allege that the incident affected her work performance"; furthermore, "although [her coworker's] conduct might have gone outside the scope of Clark's consent, that Clark invited the hug mitigates the severity" of the conduct. *Id.* at *3. Austin, however, alleges several instances of harassment spanning from her first day on the job through the incident on December 16, 2016, including verbal harassment and behavior that could be construed as physically threatening, such as entering her workspace when she was alone and making lewd movements.[2] *See* ECF No. 12 at 2. None of these behaviors did she welcome. And, of course, she did not invite Carter to attempt to "forcefully kiss" her, ECF No. 12 at 4, or hold her in a "bear hold/hug," ECF No. 4 at 3, along the back of her body when

---

[2] Although Austin's specific allegations pertaining to 2014 fall outside of the 300-day period prior to her EEOC charge, the Court notes that as long as one act of harassment falls within the applicable time period, "under the continuing violations doctrine [hostile work environment] incidents outside of the 300 days period may be timely 'if they relate to a timely incident as a series of separate but related acts amounting a continuing violation'" (*Garnes v. Maryland*, No. RDB-17-1430, 2018 WL 276425 (D. Md. Jan. 3, 2018). At the very least, allegations outside the 300 days could be construed as relevant indications of Carter's intentions in December 2016, and possibly to Safeway's awareness of harassment by him.

she subsequently turned away from him. She was so distressed after that, she says that she had to leave work early. ECF No. 4 at 3.

Finally, the Court notes that the landscape of sexual harassment claims has changed rather dramatically since *Clark*. In the last several years, courts in this District have recognized that although "some older cases suggest isolated instances of unwelcome physical contact may be insufficient to satisfy the severe/pervasive prong of a harassment claim," *Jones v. Family Health Centers of Baltimore, Inc.*, 135 F.Supp.3d 372, 379 (D. Md. 2015), the Fourth Circuit took a fresh look at the landscape in *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (holding that a reasonable jury could find a supervisor's two uses of a racist slur severe enough to engender a hostile work environment). "If isolated uses of an offensive epithet can render a workplace hostile, the Court concludes that unwanted sexual contact can do so as well." *Jones*, 135 F.Supp.3d at 379. *Cf. Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 413 (D. Md. 2015) (finding that a single instance of sexual harassment that occurred at a meeting with colleagues could satisfy the severe or pervasive element of the plaintiff's prima facie case and noting that the severity of the harasser's conduct was exacerbated because he may well have been, in some capacity, Williams' supervisor).

Austin refers to Carter as a "Manager" and "Supervisor," *See, e.g.*, ECF Nos. 1 at 7 ("Carter, Seafood Manager"), 1-1 at 1 ("I was sexually harassed by a former supervisor"), although Carter was apparently the Manager of a different department than the one in which she worked. Safeway argues that because Austin has failed to plead facts sufficient to show he had some decision-making authority over the conditions of Austin's job, Safeway's liability must be analyzed via the negligence framework used for co-worker harassment. But even if Carter was not Austin's supervisor for the purpose of imputing liability to Safeway—a matter that needs to be

explored in discovery—her factual allegations, taken together, still state a plausible claim that Safeway was negligent in hiring him in the first place or in failing to monitor his alleged harassment of female employees. The Court therefore **DENIES** Safeway's Motion to Dismiss as to the Title VII Sexual Harassment claim, and again, because Austin is *pro se*, **GRANTS** her leave to amend her Complaint to include more facts and dates regarding the sexual harassment she alleges she experienced, Safeway's awareness of same, and any corrective action Safeway may have taken.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN PART** and **DENIES-IN-PART** Safeway's Motion to Dismiss (ECF No. 10). Because Austin is currently *pro se* and appears to have potentially actionable claims of Title VII sexual harassment, negligent hiring/ retention, and assault and battery, the Court will **GRANT** Austin **forty-five (45) days to file an Amended Complaint** in accordance with the Court's discussion above. **The Court strongly encourages Austin to use this extended 45-day period to consult an attorney.**

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

**March 5, 2019**